The first case is Drake v. The Workers' Compensation Commission, 5-19-0117. Counsel, you may proceed. Thank you, Justice Holder. This is a case about accident. I'm going to get right to it. I'm going to try to be as brief as I can. I lost this case in trial. I lost it, obviously, on appeal and I'm here. And I think the reason I lost it is very simple. It's contained in page 7 of the arbitration decision. There are bad early medical histories in this case. You're very perceptive because that is your hurdle, isn't it? It is. The inconsistencies, you know, you don't need medical testimony to prove your case. An inconsistent medical history is going to undermine the claimant's credibility. That's exactly true. The interesting thing about this case is that the choice to make about what happened to Craig Kamp is a choice between a guy who had worked heavy labor for eight years as a pressman, carrying routinely a 100-pound cylinder on his shoulder, which was 35 inches in circumference, upstairs to lock it into a press. That's a choice you have. Or you can decide, as the early medical history states, that this massive disc herniation that everybody agrees to, at L45, happened, and I don't mean to be exaggerative or out of context with the court, but by taking off your underpants as you get into the shower. Those are the choices. Well, what is the plausible explanation for telling this primary physician, Dr. Peter, emergency room personnel, orthopedic surgeon, Dr. Pfeiffer, and a physical therapist, each time telling them there was no problem or accident at work? What's the plausible explanation for that? Justice Hudson, I asked my client that directly on my brief on page 11. I'm just going to read the question I asked him and his answer. My brief says, the petitioner was directly confronted with these medical records at hearing. He was asked, quote, why does this first medical record from the ER, the second one, actually, but the same day, say there's no recent trauma? Can you explain to the arbitrator why it says what it says and why we're here today? He answered, quote, because for me, trauma means I didn't, you know, have an accident, and that's where it was. I mean, I know what I'm trying to say. I didn't realize I had anything going on. I know that Friday when I went to the hospital, before I went to see my primary care doctor, it was the first time I could get in to see him, and he just gave me pain medicine and sent me on my way. I'll never go back to him again. But that evening, it got so bad, I started losing feeling in my legs. I remember it like yesterday. I thought I was paralyzed. My client testified in other areas that he knew he was hurt, but the event that triggered his medical care was the shower, was the shower. Now, if you look at the medical evidence behind that, what does the IME say? Dr. Kitchens himself said the shower couldn't have caused this. Dr. Kitchens, the IME doctor, and I've known Dr. Kitchens for some time, this is his opinion on how this massive herniation happened. On page 15 of my brief, he said, quote, it is my opinion within a reasonable degree of medical certainty that Mr. Camp's disc herniated spontaneously without any traumatic event. Bending over and removing shorts is not a supraphysiologic force. It is a common maneuver that people do on a routine basis. It is not in itself enough force to cause this to be herniated. If you look at these inconsistent histories, and you look at how the arbitrator hung her hat in her decision, my client is telling the first few providers what happened to him. And what happened to him was that he had an event that he says paralyzed him. He was naked. He had to get help to get to the hospital. And they said, how did this all start? He said, I was just getting in my shower. That's the truth. But what that does not mean is that he doesn't have a causally connected accident that happened before. Well, let me ask you, he's carrying up this 100-pound sleeve, you know, up a set of staircases, which is difficult, and he feels a problem or a pain in his back. But he doesn't tell the providers that. He did feel some pain after the incident at work, didn't he? He did. He said he felt like it was a tweak. And so he tweaked his back. This is a guy who works a heavy labor job. His testimony was that he laid up for a couple days and he was off. So I read the whole record. I believe that your client was injured at work. And I typically would not say that from the bench. But I don't think that's the issue that we have to overcome in this case in order to get him any kind of compensation, because the trier of fact is the commission. And the commission didn't believe him. I know people like your client. I've done the exact same thing, where you do something while you're working, you feel a little discomfort, and then later something, you know, goes haywire, and you're like, man, I wasn't doing anything when that happened. But, yeah, it relates back. In this case, your guy even testified that, you know, in the course of his job over the years, there were many occasions where he felt pain. And it was a pulled muscle or a tweak or, you know, on a couple days off or, you know, massage or whatever would alleviate that pain. He'd go back into work and feel fine. How do we overcome the fact that the, I mean, it is up to the commission to determine whether or not there was, you know, believability in what he is saying, and they didn't. How do we overcome that? Thank you, Justice Barberos, for the first part of that question, and the second part. Because if you look at this court's role, this court certainly under Chevron gives due deference where it should. What it also can do, though, is determine whether or not an opposite result is clearly there. That's what I have to do, what I have to talk about. And how could it be in light of the medical records? Because the medical records themselves, relied upon by the arbitrator, Justice Hudson, say that the reason my client has a massive blown-out disc at L45 is that he took off his shorts getting into the shower, and there's not a bit of medical evidence to suggest that. Here, let me turn this up a little bit. He tells the hospitals and the medical directors that this all happened when he pulled up his underpants after he took them down one or the other, as he left the shower. Both testifying experts, both yours and the respondent's, say that can't be. Pulling up your underpants cannot cause this disc herniation. But Gornett gives an opinion within a reasonable degree of medical certainty that significant lifting that he performed at work caused a disc injury that progressed over the next several days, which makes it look related. So now the question that I have is, what evidence is there in the record that it actually happened when he pulled up his underpants in the face of the only medical testimony that it cannot happen that way? It's a very good question, Justice Hoffman. I asked Dr. Gornett that question myself. When I asked him that question, page 13 of my brief, it's where I laid this out, it talks about his read of the MRI for suturages and disputes. I asked him how he could support his causation opinion, and he said, quote, I have often seen patients who have disc injuries that progress to frank herniation with even the simplest of activities. But nonetheless, the disc injury began at the time of his lifting activity. Dr. Gornett's testimony is the herniation occurred as best as we all know. There's testimony in the record, so I don't have to send you guys a big judicial notice of it. MRIs aren't time machines. They can't time these things. But the medical is not in dispute about the frank herniation and the fact that it's blown out. Kitchen says it happened on its own like spontaneous combustion. Gornett says it happened on that day. It progressed over time, and the mechanism to directly answer your question, Justice Hoffman, that mechanism is what caused this, what he thought was a tweak, what he thought he was used to, what he thought was normal for a heavy laborer. Of course that's what he told me. So really, to sum this up, as you're saying, the origin of the injury, of the condition of ill-being presently, your client is experiencing, is that what you're saying happened with carrying the sleep? Yes, Your Honor. And that it was merely manifested, even though it may have progressed to manifestation during an activity of normal in everyday life. Do you have that in Gornett's opinion? Yes, Your Honor. That was pushed in the article the way I said it. And so, therefore, the error by the arbitrator was ignoring that evidence, right? Yes. Or improperly, if not ignoring it, not giving it the way. What did the arbitrator do with Gornett's opinion? And what was, if you could summarize Gornett's opinion, did she rely on Gornett's opinion? If you look at this decision, and I read it again this morning, it appears that she believes all of the medical testimony is inconsistent. But when she hangs her hat on why she ruled the infant crying upon accident, it is very clear that she found the first three records, as Justice Hudson has pointed out, the ER, did twice that same day, if you count that as one. Dr. Piper and Excel PT, where, as Justice Hoffman pointed out, he gave the history of, I was getting into the shower and this horrible thing happened to me. But that, again, to answer your question, but that's not the beginning nor the end of the analysis. The error is, the way you can find an opposite result is that nobody other than these providers who just took these histories. There is not a piece of medical evidence that says that activity is what caused this. Well, it's not a question of there's no medical evidence that says that activity caused it. The issue is, what do we do with the medical evidence that says that that activity can't possibly cause it? And the arbitrator rested her opinion, as I read it, upon the histories he gave when he went, that this happened when he was pulling up his underwear, and that simply is contrary to all the medical experts. Now, the fact that he told somebody at a hospital it happened when I was pulling up my underwear, the problem that I think you have is the fact that Kitchens says this can happen spontaneously. So if it can happen spontaneously, why couldn't it have happened spontaneously when he was pulling up his underwear? It's not caused by the pulling up of the underwear, but that's when it happened. Dr. Kitchens said that his word, supraphyllophysiological, I can't even say it twice, that that can't cause it. So that can't be where the arbitrator hangs their hat. The only place I think that happens left is with Dr. Gornat, who had said it happened on Friday. There's consistent testimony that he felt bad over the next two days. It's happened on a Sunday. It's Monday and Tuesday. He got off to answer your question. And that Gornat opined that this is a frank, blown-out disc. It didn't happen in the shower. So part of your argument would be your client shouldn't get punished because he doesn't realize the genesis of the injury. He's a pressman, Justice Hudson. I agree with that completely. Because what if this was opposite? What if the first three records said, oh, on Friday I was lifting 100 pounds up nine stairs all day, and I hurt my back? Would that in and of itself be enough for the petitioner to carry his burden? No. They would have an IME defense. These three records aren't good for me. They never are. But that's not the end of the analysis. I think if you look at this, there's no way the arbitrator, nor the commission can hang their hat Let me ask a quick question, counsel, before you go. And I want to piggyback on a question Justice Hoffman asked. And that is, essentially, you've got a situation where you have a plausible explanation as to the history your client gave and who your client is and why he gave the history he gave. You have Gornat support for a medical cause. But I think what Justice Hoffman's picking up on is the sufficiency of the evidence with Kitchen's opinion that supports, gives some medical background for the opinion that, ultimately, the commission relied upon. So Justice Hudson asked early on, how do we carry the day, essentially, when we have this commission decision that's owed deference? And I'm sort of piggybacking on Justice Hoffman's comments. I believe that there is some medical support via Kitchen for the commission's decision. So how do I overcome that? How do I accept your argument and vote in your favor in light of that? Thank you, Justice Hoffman. This decision from page 7 of the arbitration decision that rolled through the commission says that I lost this case on accident because of three bad histories. Those bad histories say that my client got hurt in this maneuver in the shower. Dr. Kitchen himself said that was impossible. Except for one. The problem that you have is clearly the arbitrator talks about these histories, et cetera, and so on. And if we interpret this to mean the arbitrator was found, that he actually hurt himself when he pulled up his underwear, her opinion is contrary to all medical opinions in the record. But that doesn't eliminate the possibility that this spontaneous difficulty he had with his spine that Kitchen talks about occurred when he pulled up his underwear. Not because of, but at the time of. And in that particular case, there is something in her opinion that kind of suggests that. He gives a history. He was simply pulling up, removing a pair of shorts when the onset of the pain occurred. Is she suggesting that the pulling up of the shorts caused the pain? Or merely that that was the time when it happened? And if, you know, now you've got Kitchen's opinion that says this can just be spontaneous. This can happen at any point in time. I think he said it was degenerative and caused by tobacco use. I don't know what tobacco use has to do with disc problems, but he's the doctor, not me. But I don't know what to do with Kitchen's opinion about spontaneity. Let's just talk about it briefly. I think this would... Your question and that argument, if that's what the arbitrator meant, would be a stronger argument if Kitchen's had said, oh, I think the activity of bending over and pulling up your underwear, that can blow out a disc. That's not what he said. He said the opposite of that. He said it could not cause that. And if the shower is the problem and the histories that say the shower is the problem, it's possible. Justice Hoffman, I guess I'm not a doctor either. When Dr. Kitchen's told me that discs blow out spontaneously, I was confused to be candid. It's possible. But this court does not deal in possibilities. This court deals in the record. And if I lost this case to get to here on three records where my guy doesn't know he's not a doctor and not a single piece of other medical evidence in the record, in the file, says that's how it happened, I contend to view an opposite result as clearly apparent. Thank you. Okay, you have time to reply, counsel. Counsel, you may respond. Your Honor, as you may have pleaded to court, my name is Matthew Petrusek, and I'm here on behalf of the Gateway Packaging Company to ask that you affirm the decision of the commission and find that the decision is not against the NASDAQ suite. The evidence. The decision, in its entirety, is a case involving an accident. Petitioner has a burden of proof to establish, with the preponderance of the credible evidence, that he sustained an accidental injury arising out of and in the course of his employment. Completely absent from any argument made by the petitioner is the fact that there is not a single piece of evidence contemporaneous to this accident that suggests the petitioner was, in fact, hurt at work. There's no doubt the petitioner has a demanding job that could cause a problem, but when did he ever report an injury at work? Not until the seventh doctor he saw. He would go for six in this case. The first six providers he saw, there is not a single mention of a work injury. He did not report this injury to his employer. He alleges that he reported it to his girlfriend. Well, he did not report it. He didn't bring her to trial. The fact of the matter is the petitioner saw his primary care physician. He did not report a work injury. He went to the emergency department and reported an injury at home. He went to an orthopedic at Piper Spinal Care, reported an injury at home. He went to Excel Physical Therapy. He reported an injury at home. And both to Piper Spinal Care and both to Excel Sports and Physical Therapy, the petitioner said this did not happen at work. Did he say it in that way? It did not happen at work, or he just never attributed it to work? He never told the provider that it did not happen at work, did he? There is a patient intake form that indicates whether this is work-related. He says no. Petitioner even mentions his job duties to some of these providers, the two providers at Excel Physical Therapy as well as Piper Spinal Care. Neither does he mention any indication of hurting himself at work several days before this accident. What did Kitchens exactly say about this? Spontaneously did what? What did Kitchens testify regarding what happened with his back? Dr. Kitchens testified that he was unable to relate the petitioner's condition to a work injury based on a lack of any evidence other than Dr. Gornad's opinion in the petitioner's subjective statement. What did he say about the disc bursting spontaneously? What was that testimony? That a disc injury can occur spontaneously as a result of, you know, a disc injury does not require a clear traumatic event. A disc herniation can occur spontaneously. It's part of the degenerative aging process. Okay, but you were, if you interrupted, you were going on the chronology. If you never reported, you never linked it up to work. Where were you going from that point? The fact of the matter is, Your Honor, the arbitrator states in her decision that she does not believe that the petitioner has established a compensable accident, and she relies on the early medical opinions to establish that he does not provide any history of injury occurring at work. And what the arbitrator says... When was the history of connection at work occurred at any time? I'm sorry, can you repeat that? When did the connection of the present condition of ill being being linked to work occur by the claimant? That would be his first evaluation with Dr. Gornat several months after the accident, after the case had been denied, Your Honor. And in those... Dr. Gornat would be then the seventh physician the petitioner had sought about his condition. So in the arbitrator's decision, she writes that this is not a claim where there is a single inconsistent history, but rather all of the contemporaneous history records that document a history present... a consistent history of an injury at home without mention of a work injury. Your Honor, this is not even a case where we have to look at medical opinions because there is nothing to indicate this contemporaneous to this accident that it happened at work. Well, does it have to be contemporaneous? I mean, not being contemporaneous is certainly evidence contrary. But I don't know that it has to be contemporaneous. I mean, what if the commission believed Dr. Gornat that it was actually caused by work? I mean, would that be against the manifest weight of the evidence? Arguably, in this case, it could be. Why would it be against the manifest weight of the evidence? He says he had this heavy lifting job, and Gornat says the plausible explanation is that significant lifting activity performed at work causes this injury. So why would a commission decision in favor of him be against the manifest weight of the evidence? Because he didn't contemporaneously report it? That's evidence against it, but that doesn't establish it. Correct. So it's not a question of contemporaneous. I think it's a question of what's in those medical records that is contrary to Gornat's opinion. With respect, Your Honor, it's a question of credibility of the petitioner. The Supreme Court held in Shell Oil, a case from 1952 that remains in good law today and is continuously cited by both the lower courts and the commission, that contemporaneous histories are more credible. Oh, there's no question they are. And in this case, the commission has the right to weigh the histories given. But what is the contemporaneous history that you believe defeats his claim? That it was caused by him pulling up his underpants? The contemporaneous history that defeats his claim is that there is no history of working there. Ah, so the contemporaneous history, it's not something in the contemporaneous history. What's not in the contemporaneous history? It can be both. And both should be weighted by the court. Or both could be weighted by the commission. And as established in the arbitrator, Melinda Rose Sullivan's decision, she did weigh the fact that he did not provide any history of an injury at work. She had, it is on the commission to weigh the credibility of witnesses. She had the petitioner for the forum. If she had felt that he was a credible witness, that's her determination. But he presented nothing in support of his own testimony, which contradicts his prior statements. And what was his testimony? It was just, I felt a tweak? His testimony is, yes, I was lifting, just as described by Mr. Careway, I was lifting this 200 pound tube. Right, we know that. His testimony, let's get down to the nut. It's, I felt a tweak when I was engaged in my work activities. Correct. He had every opportunity to tell his doctors about that. Any of the first six providers he saw. He did not. He offered no explanation why he did not, other than he thought it happened at home. And that's great. But the fact of the matter is, Your Honor, there is nothing to support a work injury other than his own contradictory statements that he can do on a monthly basis. What about the inherent improbability that removing your shorts, according to Kitchens, is not enough for us to cause a disc to be herniated? That's what Kitchens said. No, that's not Kitchens. Both of them said it. Yeah, both of them said it. Yes, but they do testify, as Justice Hoffman pointed out, Dr. Kitchens does provide an opinion that a disc can herniate spontaneously. The fact is, the petitioner himself has not reported any complaints to any doctor other than Dr. Gornett and Dr. Kitchens of complaints prior to this incident at home. There is nothing for, other than the petitioner's own subjective statements, after the fact, to support a finding that he had prior complaints. He could have reported it to work. He could have brought someone else in to support his testimony that he had complaints of pain before. But to say that the arbitrator erred in finding that the petitioner failed to prove that he had complaints of back pain before this incident at home would be completely incorrect. This court has stated on numerous occasions that the manifest weight of the evidence is a substantial burden in this case. There is nothing in there to rebut the finding that none of the contravenous medical records support a history of injury at work. Could this have happened at work? Yes. Could this have happened while he was at home doing something else? Yes. There's nothing in there to establish that it occurred at work. So at the end of the day, your argument is simple. There's simply a failure of proof. There's a lot of possibilities, a lot of plausible theories, but you're saying he didn't carry the burden of establishing it. Correct, which is his requirement under the law. As opposed to what the arbitrator found. The arbitrator found failure of proof, didn't find that it didn't happen. Correct, and there is no opinion on causation here in this case. This is only a case that was decided on access. For these reasons, I would ask that this court find that the commission's decision is not against the manifest weight of the evidence. Now, as a secondary matter, I do have a petition up to this court to ask that this appeal be dismissed for failure to comply with the Supreme Court rules. I have argued that in my brief, and at this time, I would also just simply like to bring that up one more time and also ask that any alternative if the court does not wish to rule on the manifest weight of the evidence, this court can certainly dismiss this case under the law for failure to comply with Supreme Court rules 341.86 and 341.87. And those rules are? Second, our rule 341.86 requires that the petitioner provide a standard plus the statement of facts that includes all relevant facts to the determination that requires he present that without argument and requires that he provide appropriate citations to the record. He fails on all three merits in his statement of facts. 341.87 requires that the petitioner properly state the issues on review, provide citations to the authority and to the record. In this case, the petitioner argues for relief from this court. This court has no right to give. This court is a court of appellate jurisdiction. Petitioner seeks an award of finding of causation. He seeks a finding of TPB and a finding of mental co-responses, none of which was awarded by the commission. This court, as recognized in the past, it simply has no power to decide each finding of facts. And that is a question for a court of original jurisdiction. And the Illinois Supreme Court, I'm sorry, the Illinois Workers' Compensation Act in the Illinois legislature has decided to limit original jurisdiction to the commission and its arbitration. Thank you. Thank you, counsel. Counsel, you may reply. Real quick. What did my client do when he realized he wasn't coming to work? This happened on Sunday. He was off Monday, Tuesday. He was supposed to report back to work on Wednesday morning at 530 in the morning to test his pulse. He said, I can't make it to work today. And they called each other. He said, what's wrong with your back? I was getting in the shower. I'm in a lot of pain. Mr. Rikuzi makes it sound like my client laid up, doctor shopped, and then got his opinion. Notice that notice is not disputed in this case. Why? Because at the latest date, Barb Henry, their HR director, testified she was aware my client was claiming it was work-related. As of July 27, the accident happened June 26. He was talking at work. He was trying to figure out what was wrong with him. He tried to get short-term disability and FMLA paperwork right away. That all makes sense. He did not understand that he had a blown L45 until he got imaging. And he testified, then I knew it was something different. I knew it just wasn't a tweet. The other question asked from the bench that I want to address is the first history that Justice Holdridge asked for. My client was fired by Dr. Piper, his first orthopedic surgeon, because he didn't take work commonly. And once my client told him, hey, this needs to be built to work, he got fired. So it took him a little bit of time to see another doctor. But on October 11, 2016, this is Dr. Gornet's first record and what my client told him. Quote, he states, this problem began on 6-26-16. He works for Gateway Packaging. He's been there eight and a half years. He's lifting large sleeves of material. He states the weight was anywhere from 20 to 150 pounds up and back. He states that he knows exactly when it happened. He did not report it, as he often has pains in his arms and back. But this was different. He states that two days later, he was doing simple household activities and he bent to get into the shower and take his shorts off and had sudden and severe pain. If I lost this case, as it says on page 7 of the decision, because my client gave three medical histories that he became in sudden and severe pain when he got into the shower, then there has to be evidence that getting into the shower caused a massive L4-5 tear. And I think that's the reason I lost it. And on those grounds, an opposite result is clearly apparent. I know it's ill. I know it's ill. But how can an arbitrator say I lost it for three bad histories that nobody says could have caused this day to come? We should reverse. Thank you. Thank you, counsel, both, for your arguments in this matter this morning. It was taken under advisement and a written disposition shall remain.